UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

CATHERINE E. ORTIZ,

**MEMORANDUM AND ORDER**

              Plaintiff,           19-cv-2316(KAM)

      v.

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.

----------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

      Pursuant to 42 U.S.C. § 405(g), Catherine E. Ortiz ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or the "Commissioner"), which found that plaintiff was not eligible for disability insurance benefits under Title II of the Social Security Act ("the Act"), on the basis that plaintiff is not disabled within the meaning of the Act.  On appeal, plaintiff argues that she is disabled under the Act and, therefore, is entitled to receive disability insurance benefits.

      Presently before the court are plaintiff's motion for judgment on the pleadings and defendant's cross-motion for judgment on the pleadings.  For the reasons stated herein, plaintiff's motion is GRANTED, defendant's cross-motion is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

## I.  Procedural History

On July 14, 2015 plaintiff Catherine A. Ortiz filed an application for disability insurance benefits ("DIB"), alleging that she was disabled beginning September 25, 2014, due to pulmonary and heart conditions, anxiety, depression, and panic attacks, as well as back, hip, wrist, and ankle impairments. (ECF No. 15, Administrative Record ("Ar."), at 72, 156, 181.)

On March 9, 2016, the Social Security Administration ("SSA") denied plaintiff's request for DIB, concluding that plaintiff's condition was not severe enough to keep her from working. (*Id.* at 76, 80.)  On April 8, 2016, plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 88.)  On February 20, 2018, ALJ Michael D. Burrichter presided over plaintiff's hearing in Lawrence, Kansas. (*Id.* at 37-56.)  Plaintiff appeared in person, and was represented by Claudia Costa, Esq. (*Id.* at 35-56.)  Susan Shea, a vocational expert, also provided testimony during plaintiff's hearing. (*Id.*)  In a decision dated May 11, 2018, the ALJ concluded the plaintiff was not disabled. (*Id.* at 12-29.)  The plaintiff requested review of the ALJ's decision on May 16, 2018. (*Id.* at 1, 88-89.)  On April 1, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3.)

On April 19, 2019, plaintiff filed the instant action in federal court appealing the Commissioner's decision.  (ECF No. 1.)

## II.   Relevant Medical and Non-Medical Evidence

On February 10, 2020, the parties filed a joint stipulation of relevant facts and the court hereby incorporates it by reference.  (*See* ECF No. 14-1, Joint Stipulation of Relevant Facts ("Joint Stip.").)  Having reviewed the parties' joint stipulation of facts, the ALJ's decision, and relevant evidence in the administrative record, the court notes the following evidence:

### A. Medical Imaging Studies

Plaintiff received numerous diagnostic imaging examinations from 2014 to 2017.  (Joint Stip. at 3-13.)  A November 22, 2014 MRI of plaintiff's lumbar spine showed bulging and evidence of disc herniation.  (*Id.* at 3.)  An October 17, 2015 MRI revealed mild spondylosis with slight protrusions. (*Id.* at 6.)  On January 26, 2016, an ultrasound of plaintiff's abdomen showed an enlarged liver (hepatomegaly) and accumulation of fat in the liver (hepatic steatosis).  (*Id.* at 7.)  A January 26, 2016 CT scan of plaintiff's abdomen revealed inflammation and duodenitis.  (*Id.* at 7; Ar. at 320.)  On April 1, 2017, a MRI of plaintiff's lumbar spine revealed a degenerating disc and bulges.  (Joint Stip. at 12.)  On November 7, 2017, a CT scan of the plaintiff's lumbar spine showed signs of disc herniation

resulting in left neural foramen stenosis and facet hypertrophy, a swelling in the joint that increases pressure on nerves in the spine.  (*Id.* at 13.)

### B. Medical Treatment and Opinion of Dr. Mehran Manouel, M.D.

On September 24, 2014, plaintiff presented to Dr. Mehran Manouel, M.D., at Able Orthopedics and Sports Medicine, with complaints of low back, left elbow, left wrist, and left elbow pain, secondary to tripping and falling down a flight of stairs, while at work, on September 18, 2014.  (Joint Stip. 2-3.) During a December 8, 2014 examination, Dr. Manouel noticed decreased range of motion in the lumbar spine with a grip strength of 4/5.  (*Id.* at 3.)  Dr. Manouel assessed lumbar sprain, left hip sprain, left wrist sprain, left elbow sprain, left ankle sprain, and assessed plaintiff's disability status as total.  (*Id.* at 3 (citing Ar. 386-87).)

### C. Medical Examination and Opinion of Dr. Jay Nathan, M.D.

On February 7, 2015, Dr. Jay Nathan conducted an independent medical examination in connection with plaintiff's worker's compensation claim.  (Joint Stip. at 4.)  During the examination, plaintiff complained of pain during the range of motion test, with Dr. Nathan opining that there was "minimal vertebral tenderness."  (Ar. at 482.)  Dr. Nathan believed "maximum medical improvement had not been reached and that continued physical therapy and home exercises were warranted."

4

(Joint Stip. at 4.)  Dr. Nathan also opined that plaintiff had a
25% degree of disability and could return to light duty work
with no lifting greater than 20 pounds and that plaintiff could
lift and carry up to 10 pounds frequently and sit and stand
during an eight-hour workday with rests.  (*Id.*)

### D. Medical Treatment and Opinion of Dr. Andrew Cordiale, D.O.

On August 4, 2015, plaintiff attended a consultation
with Dr. Andrew Cordiale, D.O. at New York Spine Specialist.
(Joint Stip. at 5.)  During the examination, plaintiff exhibited
a limited range of motion in the lumbar spine.  (*Id.*)  Dr.
Cordial opined that plaintiff should refrain from heavy lifting,
carrying, and bending.  (*Id.*)  On December 15, 2015, plaintiff
attended a follow-up appointment with Dr. Cordiale and continued
to report pain in her lower back, neck, and right foot pain.
(*Id.* at 6.)  Dr. Cordiale found the plaintiff's motor function
during the lumbar neurological exam to be "not within normal
limits on inspection[,]" with abnormal sensation at the L5 and
S1 vertebrae.  (Ar. at 301.)  Dr. Cordiale recommended plaintiff
refrain from heavy lifting, carrying, and bending. (*Id.* at 6.)
In a March 8, 2016 visit, plaintiff reported pain radiating from
her back and both legs, with examination showing a limited range
of motion in the lumbar spine.  (*Id.* at 9.)  Dr. Cordiale
recommended that plaintiff refrain from activities that

aggravated pain.  (*Id.*)  Dr. Cordiale also diagnosed plaintiff with lumbar disc herniation with radiculopathy, or a nerve root compression in the lumbar spine.  (Ar. at 419.)

### E. Medical Source Statement of Dr. Faisal Waseem, M.D.

In a medical source statement completed on February 15, 2018, Dr. Waseem concluded that plaintiff had numerous physical limitations, including that she could never lift or carry any weight, could sit for four hours in a workday and could only stand and walk for 30 minutes to an hour in a workday. (Joint Stip. at 13; Ar. at 623-28.)  Additionally, Dr. Waseem observed that the plaintiff could not be exposed to unprotected heights, nor was she able to walk on uneven surfaces or climbing a few steps at a reasonable pace.  In addition to records relevant to this appeal, Dr. Waseem had a treating history as plaintiff's primary care physician from 2014 to 2018. (Joint Stip. at 2 n.1.)

### F. Consultative Examiner Opinion of Dr. John Fkiaras, M.D.

Dr. John Fkiaras, M.D. conducted a consultative internal medicine examination of February 24, 2016.  (Joint Stip. at 8.)  Plaintiff rated her back pain as "9 out of 10[,]" and could only squat one tenth of the way down.  (Joint Stip. at 8; Ar. at 410-11.)  Plaintiff also had lumbar spine flexion of 30 degrees, lateral flexion bilateral lumbar spine of 15 degrees, and lumbar spine rotation bilaterally of 15 degrees.

(Ar. at 411.)  The plaintiff also had positive straight leg
raises on the left side in seated and supine positions.  (*Id.*)
Dr. Fkiaras opined that plaintiff had moderate limitations
walking, sitting, and climbing stairs, and a moderate-to-severe
limitation standing for extended periods.  (Joint Stip. at 8;
Ar. 411-12.)

### G. Medical Treatment and Opinion of Dr. Joseph Weinstein, D.O.

On June 29, 2016, plaintiff was seen by Dr. Joseph
Weinstein, D.O., at Comprehensive Orthopedic and Spine Care.
Plaintiff complained of pain and stiffness in the lumbar spine,
rating such pain as a "five out of ten."  (Joint Stip. at 10.)
Plaintiff had a positive straight leg test on her left side and
Dr. Weinstein diagnosed her with lumbar muscle spasms, and
lumbar discogenic pain, and lumbar radiculopathy, or a nerve
root compression in the lumbar spine.  (Joint Stip. at 10-11;
Ar. at 528-29.)  Plaintiff visited Dr. Weinstein again on August
9, 2016 and the examination findings remained largely unchanged.
(Joint Stip. at 11.)  In a January 10, 2017 visit, plaintiff had
another positive straight leg test on the left side and a
diagnosis of lumbar radiculopathy.  (Ar. at 518.)  Plaintiff
visited Dr. Weinstein on March 13, April 4, May 15, July 17, and
September 25, 2017 with unchanged diagnoses with the exception
of a reduction in lumbar flexion and extension.  (Joint Stip. at

12.)  In a November 13, 2017 visit, Dr. Weinstein again
diagnosed plaintiff with lumbar radiculopathy. (ECF No. 11,
Plaintiff's Memorandum of Law ("Pl. Mem."), at 17; Ar. at 499.)
Plaintiff rated pain symptoms as a "seven out of ten."  (Ar. at
498.)

### H. Statements and Opinions of Orlando Ortiz

Plaintiff's husband, Orlando Ortiz, gave a third party
function report in connection with plaintiff's DIB claim.  (Ar.
at 208.)  Mr. Ortiz asserted that plaintiff "cannot stand long
enough to cook or clean" and that he has to "come home from work
and do everything."  (*Id.*)  Mr. Ortiz described severe
restrictions in plaintiff's ability to bathe, lift objects, and
walk more than five minutes.  (*Id.* at 209-13.)

### III.   The ALJ's Disability Determination

Applying the five-step procedure for evaluating
disability claims pursuant to 20 C.F.R. § 416.971, the ALJ
determined at step one that the plaintiff had not engaged in
substantial gainful activity since her alleged onset date of
September 24, 2014.  (Ar. at 18.)  At step two, the ALJ
determined that plaintiff suffered from severe impairments,
including: degenerative disc disease of the lumbar spine with
disc bulge, chronic obstructive pulmonary disease, and obesity.
(*Id.*)  Additionally, the ALJ found that the medical record
reflected the additional impairments of hepatomegaly/hepatic

steatosis, duodenitis, gastroesophageal reflux disease, and
dermatitis.  (*Id.*)  The ALJ found that any other impairments
alleged by the plaintiff were not severe enough under the SSA or
accompanying regulations because the impairments had "no more
than a minimal effect" to perform basic work activities for a
continuous period of at least 12 months.  (*Id.* at 20.)

At step three, the ALJ determined that the defendant
did not have an impairment or combination of impairments that
met or medically equaled the criteria of any physical
impairment, including disorders of the spine under Listing
1.04(A) and chronic respiratory disorders under Listing 3.02.
(*Id.*)  In addition, based on the information in the record and
the plaintiff's testimony during the ALJ hearing about her
weight, the ALJ found that the combined effects of obesity with
other impairments or obesity solely as a claim were not
supported by the evidence.  (*Id.* at 21.)

At step four, the ALJ determined that plaintiff had
the residual functional capacity ("RFC") to perform light work.
(*Id.*)  The ALJ also found that the plaintiff could lift and
carry up to twenty pounds occasionally, lift or carry up to ten
pounds frequently, stand and/or walk for six hours out of an
eight-hour workday, and sit for six hours out of an eight hour
workday.  (*Id.*)  Additionally, the ALJ found that the plaintiff
should never climb ladders or ropes, could occasionally climb

ramps, crouch, kneel, or crawl, and that the plaintiff should never work at unprotected heights. (*Id.*) Finally, the ALJ concluded that the plaintiff should never be exposed to concentrated humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. (*Id.*)

In reaching his RFC finding, the ALJ gave "partial weight" to Dr. Fkiaras, the consultative internal medicine examiner, where his assessment was "generally consistent with the overall record showing the [plaintiff had] a severe back impairment." (*Id.* at 24.) The ALJ explained that Dr. Cordiale's diagnosis of spine and disc issues was given "partial weight" because it was generally consistent with the overall record. (*Id.*) In addition, the ALJ noted that Dr. Cordiale's assessment as to plaintiff's ability to lift "heavy" objects as "too vague." (*Id.*) The ALJ also gave Dr. Waseem's prepared medical source statement "partial weight," because it was generally consistent with plaintiff's severe limitations in lifting, standing, sitting, and bending, yet differed from more recent examinations that showed normal to mild findings. (*Id.* at 25-26.) The ALJ further concluded that Dr. Nathan's workers' compensation evaluation held "little weight" because the assessment involved only temporary restrictions and that the plaintiff "could be ready for full [duty] in 3 to 4 months." (*Id.* at 26, 484.)

Finally, the ALJ gave partial weight to the statements by Orlando Ortiz, the plaintiff's husband. (*Id.* at 26.) The ALJ reasoned that Mr. Ortiz did not possess the necessary medical training to assess the plaintiff's alleged physical and mental disabilities. (*Id.*) The ALJ also opined that he could not consider Mr. Ortiz as a disinterested third party. (*Id.*)

Lastly, at step five, the ALJ concluded that the plaintiff was able to perform jobs available in substantial numbers in the national economy, including as a light care housekeeper, hand cleaner, and a light machine tender. (*Id.* at 27-29.) Thus, the ALJ concluded that the plaintiff was not disabled as defined in 20 CFR § 404.1520(f). (*Id.* at 29.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's
decision only if the factual findings are not supported by
substantial evidence or if the decision is based on legal error.
*Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008).
"Substantial evidence is more than a mere scintilla," and must
be relevant evidence that a "reasonable mind might accept as
adequate to support a conclusion." *Halloran v. Barnhart*, 362
F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420
U.S. 389, 401 (1971)) (internal quotation marks omitted).  If
there is substantial evidence in the record to support the
Commissioner's factual findings, those findings must be upheld.
42 U.S.C. § 405(g).  Inquiry into legal error "requires the
court to ask whether 'the claimant has had a full hearing under
the [Commissioner's] regulations and in accordance with the
beneficent purposes of the [Social Security] Act.'"  *Moran v.
Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The reviewing court
does not have the authority to conduct a *de novo* review, and may
not substitute its own judgment for that of the ALJ, even when
it might have justifiably reached a different result.  *Cage v.
Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be
"disabled" within the meaning of the Act.  *See* 42 U.S.C. §§
423(a), (d).  A claimant is disabled under the Act when he is
unable to "engage in any substantial gainful activity by reason

12

of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than
12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d
126, 131–32 (2d Cir. 2000).  The impairment must be of "such
severity" that the claimant is unable to do his previous work or
engage in any other kind of substantial gainful work.  42 U.S.C.
§ 423(d)(2)(A).  "The Commissioner must consider the following
in determining a claimant's entitlement to benefits: '(1) the
objective medical facts [and clinical findings]; (2) diagnoses
or medical opinions based on such facts; (3) subjective evidence
of pain or disability . . . ; and (4) the claimant's educational
background, age, and work experience.'" *Balodis v. Leavitt*, 704
F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*,
174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the
Commissioner, a five-step sequential evaluation process is used
to determine whether the claimant's condition meets the Act's
definition of disability.  *See* 20 C.F.R. § 404.1520.  This
process is essentially as follows:

> [I]f the Commissioner determines (1) that the
> claimant is not working, (2) that he has a
> 'severe impairment,' (3) that the impairment
> is not one [listed in Appendix 1 of the
> regulations] that conclusively requires a
> determination of disability, and (4) that the
> claimant is not capable of continuing in his

> prior type of work, the Commissioner must find
> him disabled if (5) there is not another type
> of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2). In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. If the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," however, the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

Plaintiff contends that remand of this matter is warranted because: (1) the ALJ failed to properly evaluate Listing 1.04(A) at step three; (2) the ALJ's decision was based on an improper legal standard at step two of the sequential evaluation process; and (3) the ALJ's RFC determination was not supported by substantial evidence. (Pl. Mem. at 16-28.) For the reasons discussed below, the court finds the ALJ failed to

provide adequate analysis for his finding that plaintiff's medical evidence did not meet or equal Listing 1.04(A). Accordingly, the court finds that remand of this matter for further administrative proceedings is required.

Having reviewed the ALJ's decision, the relevant medical evidence, and administrative record, the court concludes that the ALJ erred by failing to adequately explain whether plaintiff satisfied criteria for Listing 1.04(A) during step three of the sequential analysis, and therefore remands this action for further proceeding consistent with this Memorandum and Opinion. Because the court concludes that the ALJ erred in failing to make findings as to whether plaintiff's disabilities satisfy the criteria under Listing 1.04(A) and remands for this purpose, the court declines to address plaintiff's remaining contentions on appeal.

## I.   The ALJ's Assessment of Listing 1.04

The ALJ found that plaintiff's impairments did not meet or equal Listing 1.04 (disorders of the spine). (Ar. at 20.) "The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). "The regulations also provide for a finding of such a disability *per se* if an individual has an

impairment that is 'equal to' a listed impairment." *Id.* (citing 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which ... is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience." (internal quotation marks omitted))); *see also* 20 C.F.R. § 416.920(d).

The claimant bears the burden at step three to prove he or she meets the requirements necessary to meet or equal the Listings.  Nonetheless, the ALJ is required to explain why a claimant failed to meet or equal the Listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Rockwood v. Astrue*, 614 F. Supp.2d 252, 273 (N.D.N.Y. 2009) (citation omitted). Notably, it is the ALJ's responsibility to "build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012).  "While the ALJ may ultimately find that [a considered listing] do[es] not apply to Plaintiff, he must still provide some analysis of Plaintiff's symptoms and medical evidence in the context of the Listing criteria." *Critoph v. Berryhill*, No. 16-cv-00417(MAT), 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (*quoting Peach v. Colvin*, No. 15-cv-104S, 2016 WL 2956230, at *4 (W.D.N.Y. May 23, 2016)).  Failure to do so may warrant remand.  *See, e.g.,*

*Guevara v. Comm'r of Soc. Sec.*, No. 19-cv-601S, 2020 WL 5628063, at *4 (W.D.N.Y. Sept. 21, 2020) (remanding where the "ALJ failed to make or explain specific findings regarding Listing 1.04(A)"); *Torres v. Colvin*, No. 14-cv-479S, 2015 WL 4604000, at *4 (W.D.N.Y. July 30, 2015) (remanding where "the record evidence suggests that Plaintiff's symptoms could meet the Listing requirements in 1.04(A)" but the ALJ's "only reference to it is a recitation of the standard"); *Cherico v. Colvin*, No. 12-cv-5734(MHD), 2014 WL 3939036, at *28 (S.D.N.Y. Aug. 7, 2014) (holding that an ALJ merely stating that he or she had considered the requirements of a listing was "patently inadequate to substitute for specific findings in view of the fact that plaintiff has at least a colorable case for application of listing 1.04(A)" and that where there is record support for each of the necessary symptoms, the ALJ was required to address that evidence, and his failure to specifically do so was error that would justify a remand).

For a disorder of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), to meet Listing 1.04(a), it must result in compromise of a nerve root (including the cauda equina) or the spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine,

> motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by
> sensory or reflex loss and, if there is
> involvement of the lower back, positive
> straight-leg raising test (sitting and
> supine).

20 C.F.R. Part 404, Subpart P, Appendix 1.  Where, as here, a

claimant alleges that she meets Listing 1.04(A) based on a lower

back injury, disorder, or condition, she must meet all five

criteria included in that listing.

Here, plaintiff argues that there is "overwhelming

evidence" to show that the impairments described in the record

meet Listing 1.04.  (Pl. Memo. at 17.)  Specifically, plaintiff

relies on MRI scans, CT scans, and discography results that

support findings of disc herniation, hypertrophy, and

degenerative disc disease.  (*Id.* at 17.)  Plaintiff also

highlights records that show a diminished range of motion,

evidence of motor loss, as well as positive straight leg raises

over the course of three years.  (*See* Pl. Mem. at 18-19 (citing

to Ar. 290, 301-302, 438, 455, 499, 409-12).)  Defendant asserts

that plaintiff has not carried her burden of proof in

establishing a disorder of the spine and therefore her

impairments have failed to meet or equal the criteria set forth

in Listing 1.04.  (*See* ECF No. 13, Defendant's Memorandum of Law

("Def. Mem.") at 8 (citing *Poupore v. Astrue*, 556 F.3d 303, 306

(2d Cir. 2009).)

### A. Plaintiff's Listing 1.04(A) Criteria

To satisfy the requirements under Listing 1.04, the claimant must demonstrate that all five criteria were met simultaneously and for the necessary duration.  Where there is conflicting evidence as to listing criteria, a court may weigh whether or not plaintiff's impairments meet each of the requirements for Listing 1.04(A).  *Ryan v. Astrue*, 5 F. Supp. 3d 493, 508 (S.D.N.Y. 2014).  The Commissioner reasoned that plaintiff's showing of losses in sensation, motor strength, and normal reflexes were not sufficient to establish a disability as required under Listing 1.04(A).  (Def. Mem. at 9.)  In response, plaintiff argues that the ALJ erred by failing to properly evaluate plaintiff's medical criteria under Listing 1.04(A), despite the "overwhelming evidence" that plaintiff's impairment met Listing 1.04(A).  (*See* Pl. Mem. at 15-16.)

Having reviewed the administrative record and relevant evidence, the court concludes that plaintiff carried her burden of providing evidence to support a colorable finding of disability under Listing 1.04(A).  In other words, the court concludes that there is evidence in the record of a "disorder" potentially capable of meeting the threshold requirement of Listing 1.04.  For instance, Dr. Cordiale's December 15, 2015 assessment reveals decreased motor strength, abnormal reflexes in the lower extremities, and abnormal sensation in the L5 and

S1 vertebrae.  (Ar. at 301.)  The record also contains examples
of plaintiffs diminished limitation of motion of her lumbar
spine, including a December 8, 2014 examination where Dr.
Manouel documented plaintiff's decreased range of motion in the
lumbar spine with a grip strength of 4/5.  (Joint Stip. at 3.)
Dr. Manouel assessed lumbar sprain, left hip sprain, left wrist
sprain, left elbow sprain, left ankle sprain, and assessed
plaintiff's disability status as "total."  (Ar. at 393.)
Further, the record contains evidence that plaintiff had a
positive straight leg raise.  Dr. Fkiaras examined plaintiff on
February 24, 2016 and noted that plaintiff complained of back
pain, had a positive straight-leg raising test (sitting and
supine), and had a limited range of motion.  (Joint Stip. at 8;
Ar. at 410-12.)  Finally, in a treatment record from March 8,
2016, Dr. Cordiale diagnosed the plaintiff with "lumbar disc
herniation with radiculopathy."  (*See* Ar. at 419; *see also id.*
at 499 (Dr. Joseph Weinstein diagnosing plaintiff with lumbar
radiculopathy and lumbar discogenic pain on November 13, 2017));
*Scully v. Berryhill*, 282 F. Supp. 3d 628, 635 (S.D.N.Y.
2017)("Listing 1.04(A) requires—in addition to a spinal disorder
such as a herniated disc, arthritis, degenerative disc disease,
or a vertebral fracture."); *Norman v. Astrue*, 912 F. Supp. 2d
33, 78 (S.D.N.Y. 2012) (noting that lumbar radiculopathy
evidenced nerve root compression).  On March 8, 2016, during a

motor exam of the plaintiff, her reflexes were described as
"abnormal in the lower extremities.  Sensation is abnormal [in
the] left L5 and bilateral S1 dermatomes."  (Ar. at 425.)
Accordingly, as described above, plaintiff set forth evidence to
support a colorable finding of disability under Listing 1.04(A).
*See Parks v. Comm'r of Soc. Sec.*, No. 19-cv-00505 (EAW), 2020 WL
3542123, at *6 (W.D.N.Y. June 30, 2020) ("Plaintiff has made at
least a colorable case that [she] meets [or equals] the
requirements of Listing 1.04(A) and thus, the ambiguities noted
above are critical to a finding of disability.").

     Because there is evidence supporting a colorable
finding that plaintiff met the criteria set forth in Listing
1.04(A), "the ALJ must provide an explanation of his reasoning
as to why he believes the requirements are not met and explain
the credibility determinations and inferences he drew in
reaching that conclusion." *See Ryan*, 5 F. Supp. 3d at 509
(citing *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir. 1982));
Here, for the reasons stated below, the court concludes that the
ALJ failed to adequately explain his reasoning as to the finding
under Listing 1.04(A) and, therefore, remands this case for
further proceedings.

### B. Remand is Appropriate for Clarification of Listing 1.04(A)

     Where evidence in the record suggests that a plaintiff
could meet criteria of Listing 104(A), remand is proper when the

court "cannot determine whether the ALJ properly considered the Listing because his only reference to it is a recitation of the standard." *See Torres*, 2015 WL 4604000, at *4; *Cherico*, 2014 WL 3939036, at *28; *see also McIntosh v. Berryhill*, No. 17-cv-5403 (ER) (DF), 2018 WL 4376417, at *18 (S.D.N.Y. July 16, 2018) ("[C]onflicting medical evidence left unaddressed by the ALJ, combined with significant omissions in Plaintiff's medical records, render this Court unable to conclude that the ALJ's ultimate decision that Plaintiff failed to satisfy Listing 1.04(A) was supported by substantial evidence), *report and recommendation adopted*, No. 17-cv-5403(ER)(DF), 2018 WL 4374001 (S.D.N.Y. Sept. 12, 2018).

District courts have discretion to remand for further proceedings when the results of physical examinations are not discussed as to how they relate to listing criteria in the step three analysis and when "boilerplate language" is used instead. *Ryan,* 5 F. Supp. 3d at 508 ("The ALJ's decision contains boilerplate language that provides no meaningful explanation for his conclusion that plaintiff did not meet Listing 1.04(A)."). Furthermore, even if the ALJ would ultimately have decided that the plaintiff's impairments did not meet or equal Listing 1.04's criteria, the plaintiff should be provided with reasons why these criteria have not been met. *See Norman*, 912 F. Supp. 2d at 81 ("On remand, the ALJ should consider whether plaintiff

meets the requirements of Listing 1.04(A) and he should explain his reasoning for his ultimate determination."). Additionally courts hold that is "particularly important for the ALJ to specifically address evidence with respect to the step three analysis, because a claimant whose condition meets or equals that of a Listing is deemed disabled *per se* and is eligible to receive benefits" and when symptoms "appear to match those described in a listing, the ALJ must explain a finding of eligibility based on the Listings." *Giambrone v. Colvin*, No. 15-cv-05882 (PKC), 2017 WL 1194650, at *18 (E.D.N.Y. Apr. 3, 2017) (quoting *Peach*, 2016 WL 2956230, at *3).

In the ALJ's decision, it appears the ALJ used boilerplate language to assert that the plaintiff does not have a disorder of the spine that meets or medically equals the severity of Listing 1.04(A). (Ar. at 20.) The ALJ states that "[a]s the overall record did not demonstrate these requirements, I find the [plaintiff's] lumbar spine impairment did not meet or medically equal the listing." (*Id.*) In making this finding, the ALJ stated, in conclusory terms, that "[t]he record does not contain any indication that a treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments singly or in combination, medically meet or equal the criteria of any listed impairment." (*Id.*) The ALJ's conclusory statement is

"inadequate to substitute for specific findings in view of the fact that plaintiff has at least a colorable case for application of listing 1.04(A)," *Cherico*, 2014 WL 3939036, at *28, and remand is warranted here.  Further, although on appeal the Commissioner connects examination findings from various doctors to reasons why the plaintiff failed to carry her burden in proving Listing 1.04 criteria, (*see* Def. Mem. at 7), the ALJ's written decision does not.  "The ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'"  *Hamedallah ex rel. E.B.*, 876 F. Supp. 2d at 142.  Due to the absence of specific findings by the ALJ, this court is unable to meaningfully review the ALJ's determination at step three of the sequential analysis.  *See Rowe*, 2018 WL 4233702, at *3 ("The ALJ's failure to discuss any of this evidence at step three of the sequential evaluation was erroneous. This Court is therefore unable to perform a meaningful review of the ALJ's conclusion that Plaintiff did not meet the requirements of Listing 1.04(A).").

Nonetheless, an ALJ's unexplained conclusion at step three of the analysis may be upheld where other portions of the decision and other "clearly credible evidence" demonstrate that the conclusion is supported by substantial evidence.  *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982); *see also Salmini v.*

*Comm'r of Soc. Sec.*, 371 Fed. Appx. 109, 112–13 (2d Cir. 2010) (summary order). Here, although the ALJ does discuss some of the medical evidence related to plaintiff's back pain in the written decision, these findings only relate to the plaintiff's RFC determination and do not provide rationale as to how the findings connect to specific criteria in Listing 1.04(A) under step three of the analysis. (*See* Ar. at 21–29); *see also Lamar v. Berryhill*, No. 17-cv-1019 (MPS), 2018 WL 3642656, at *8 (D. Conn. Aug. 1, 2018) (remanding case where the court was "largely left to speculate how the evidence discussed in the ALJ's RFC rationale applies in the Listings context, as the ALJ did not make the necessary findings on issues pertinent to his determinations at step three of the disability analysis"). Accordingly, for the reasons set forth above, remand is proper so that the ALJ may provide further analysis and explanation of plaintiff's medical examinations, imaging results, and other evidence in the context of Listing 1.04(A).[1]  On remand, the ALJ should specifically explain his finding as to whether plaintiff

---

[1]     It is not the function of the Court to weigh the medical evidence of record to determine whether Listing 1.04(A) was met. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("It is not our function to determine de novo whether plaintiff is disabled." (internal quotation marks omitted)). It is the ALJ's job to make this determination in a way a court can follow. *Abramaitys v. Berryhill*, No. 16-cv-00660 (MAT), 2017 WL 4456700, at *3 (W.D.N.Y. Oct. 6, 2017) ("[I]t is not the function of this Court to weigh the medical evidence and determine if plaintiff meets the listing requirements. It is the Commissioner's function to make that determination and, in this case, the ALJ failed to do so in a manner that allows for meaningful review.").

meets or equals the criteria specified in Listing 1.04(A).  *See Nashir v. Berryhill*, No. 18-cv-767 (HKS), 2020 WL 1445069, at *5 (W.D.N.Y. Mar. 25, 2020) ("Plaintiff is clearly owed a more substantive explanation of why he did not meet the Listing 1.04A. If, on remand, Plaintiff is once again found not disabled at step three, the ALJ must provide an explanation of what criteria from Listing 1.04A Plaintiff failed to meet in consideration of all of the evidence regarding his severe impairments of the cervical spine. Specifically, the ALJ is directed to address all conflicting evidence and provide reasons for discounting that evidence which he rejects.").

## C. Plaintiff's Remaining Arguments

The ALJ's error at step three, as discussed above, is a sufficient basis for reversal of the Commissioner's decision and remand for further proceedings.  Because the ALJ will need to perform a new sequential evaluation on remand, the court need not address plaintiff's remaining arguments, which concern other steps in the sequential analysis.  *See, e.g.*, *Ramirez Morales v. Berryhill*, No. 17-cv-06836 (MAT), 2019 WL 1076088, at *5 (W.D.N.Y. Mar. 7, 2019) (declining to consider plaintiff's remaining arguments after remanding administrative proceeding due to the ALJ's failure to properly consider plaintiff's medical records as they pertained to Listing 1.04(A)); *Rowe*, 2018 WL 4233702, at *5 (same).

## CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the pleadings is GRANTED, defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff and close the case.

SO ORDERED.


                                    /s/
                                    _____
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge
                                    Eastern District of New York


Dated:     Brooklyn, New York
           December 28, 2020